## In re TWINLAB CORPORATION SECURITIES LITIGATION.

### No. 98–CV–7425(ADS).

United States District Court, E.D. New York.

Feb. 23, 2002.

Milberg, Weiss, Bershad, Hynes & Lerach, LLP, New York, NY (Sanford P. Dumain, David J. Bershad, George A. Bauer III, of Counsel), Schiffrin & Barroway, LLP, Bala Cynwyd, PA (Richard S. Schiffrin, David Kessler, of Counsel), for plaintiffs.

Wilkie, Farr & Gallagher, New York, NY (Michael R. Young, John R. Oller, of Counsel), for defendant Twinlab Corp.

Simpson, Thacher & Bartlett, New York, NY (Michael J. Chepiga, William M. Regan, of Counsel), for defendant John McCusker.

Mayer, Brown & Platt, New York, NY (Richard A. Spehr, John M. Conlon, Joseph DeSimone, of Counsel), for the defendants Ross Blechman and Dan Blechman.

Skadden, Arps, Slate, Meagher & Flom, LLP, New York, NY (Jay B. Kasner, Joanne Gaboriault, of Counsel), for defendants Bear, Stearns & Co, Inc. and Donaldson, Lufkin & Jenrette Securities Corp.

Schulte, Roth & Zabel, New York, NY (David J. Kramer, Michael E. Swartz, of Counsel), for defendants Green Equity Investors II, LP, Leonard Green & Partners, LP, John G. Danhakl, Jennifer Holden Dunbar.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This class action securities fraud case was brought by purchasers of stock in defendant Twinlab Corp. ("Twinlab") against the corporation, its underwriters, and its directors and officers (collectively, the "defendants"), alleging that the company engaged in fraudulent accounting and business practices in an effort to artificially inflate its stock price. Presently before the Court are motions for final approval of the settlement, plan allocation and the award of attorneys' fees and expenses.

### I. BACKGROUND

The detailed factual background of this dispute is set forth in the Court's decision and order of July 5, 2000, *In re Twinlab Corp. Sec. Litig.*, 103 F.Supp.2d 193, 196–201 (E.D.N.Y.2000). Familiarity with this decision is presumed and it is deemed incorporated in this decision. On March 5, 2001, the parties to this action reached a memorandum of understanding to settle this matter. Thereafter, the parties executed the Stipulation and Agreement of Settlement (the "Settlement Agreement") on November 5, 2001, and following the Court's approval, counsel for the plaintiffs ("counsel") mailed 15,200 notices to class members. There were no objections to the settlement and only two class members requested to be excluded from the class.

The Settlement Agreement provides for a total cash settlement of $26,485,893.70 which shall be paid first to the expenses for the administration of the settlement, the attorneys' fees and expenses and the remainder to be distributed to the qualified class members. Counsel request an award of attorneys' fees of 33⅓%, which amounts to $8,828,543 and seek reimbursement of the litigation expenses of $134,043.36.

### II. DISCUSSION

#### A. Class Certification

The requirements for class certification under Rule 23 of the Federal Rules of Civil Procedure are: (1) numerosity; (2) common questions of law or fact; (3) typicality; and (4) fair representation of the plaintiffs by the representative parties. Fed.R.Civ.P. 23(a). In addition to these requirements, a party seeking class certification must show that (a) common questions of law or fact predominate and (b) a class action is a superior means to adjudicate the action. Fed.R.Civ.P. 23(b)(3).

The plaintiffs have demonstrated that the class meets the above mentioned requirements. First, the element of numerosity is met based upon counsel's representation that it sent out 15,200 notices to the class members. Second, the element of common questions of law and fact is met, because the complaint alleges that the defendants engaged in a common course of conduct (the making of false and misleading statements) with respect to

each member of the class who purchased or otherwise acquired the common stock of Twinlab on the open market during the class period.

Third, the element of typicality is met because the class members have been allegedly harmed by the same course of conduct (the distribution of false and misleading information which artificially inflated the stock of Twinlab). Fourth, the element of fair representation of other class members is met by the lead plaintiffs' representation that there are no conflicts of interest between the lead plaintiffs and the other members of the class.

Fifth, the element of common questions of law and fact predominate is met because the liability of the defendants arises out of their alleged distribution of false and misleading statements and omission of material facts regarding Twinlab's business operations and financial results. Finally, the sixth element, that a class action is a superior means to adjudicate this matter, is met because of the numerous plaintiffs involved. Accordingly, the Court certifies this action as a class action.

### B. The Settlement Agreement

■ Rule 23(e) of the Federal Rules of Civil Procedure requires that any settlement or dismissal of a class action be approved by the court. In determining whether to approve a class action settlement, the district court must determine whether the settlement is "fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir.2000). In so doing, the court must "eschew any rubber stamp approval" yet simultaneously "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir.1974). Judicial discretion should be exercised in

light of the general policy favoring settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir.1982).

■ The Second Circuit has identified nine factors (the "Grinnell factors") that courts should review in determining the fairness of a proposed settlement: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

■ Furthermore, the court should analyze the negotiating process in light of "the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves." *Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir.1983) (citations omitted). A strong presumption of fairness attaches to proposed settlements that have been negotiated at arms-length. *See Chatelain v. Prudential–Bache Sec.*, 805 F.Supp. 209, 212 (S.D.N.Y. 1992).

■ The plaintiffs argue that the Grinnell factors weigh in favor of the settlement. In particular, the plaintiffs contend that: (1) the case involves complex legal and factual issues and would require the involvement of expensive experts; (2) no class member objected to the settlement and only two requested to be excluded from the class; (3) the plaintiffs conducted

some pretrial discovery (including, they say, reviewing tens of thousands of pages of documents, interviewing three Twinlab officers, including two of the Individual Officer Defendants, reviewing employees' public filings, annual reports, press releases, other public statements, consulting with plaintiffs' experts and agents concerning factual allegations contained in the complaint, damages allegedly sustained by the class and researching other potential defenses asserted in the action); (4) the defendants would assert in the exercise of reasonable diligence that they did not know of any false statements or omissions contained in the Registration Statement or the Prospectus; (5) the plaintiffs must overcome the difficult obstacle in proving that the defendants' misrepresentations caused the stock to decline, as opposed to other market forces; (6) there was some risk that the defendants may successfully defeat the class certification if the litigation were to proceed; (7) the $26.5 million settlement is a substantial recovery for the class in relation to the risks involved in attempting to recover the plaintiffs' range of approximated damages (between $127 million (high end) to $53 million (low end)); (8) the range of the settlement is reasonable given the difficulties and uncertainties of litigating the case; and (9) the settlement is reasonable in light of the risks and uncertainties of litigation in this matter.

Based upon the foregoing, I find that the terms and conditions of the Settlement Agreement are "fair, adequate, and reasonable" and the Settlement Agreement is approved. Accordingly, the Court directs that judgment be entered dismissing the complaint on the merits and with prejudice, subject to the settlement.

## C. Approval of the Plan Allocation

The adequacy of an allocation plan turns on whether the proposed allocation is fair and reasonable. *In re Painewebber Ltd. P'ship Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y.1997). The allocation plan is set forth in the Settlement Agreement. Settlement Agreement at 15–19. The plan requires any member of the class to submit a valid proof of claim before she or he is entitled to receive any proceeds from the Net Settlement Fund. Plaintiffs' co-lead counsel is responsible for supervising the administration of the settlement. Because the allocation plan appears fair and reasonable, the Court approves the allocation plan.

## D. Attorneys' Fees

Counsel request a fee of 33⅓% of the $26,485,893.70 settlement. This amounts to the sum of $8,828,543.

The Second Circuit has stated that attorneys who create a "common fund" are entitled to "a reasonable fee—set by the court—to be taken from the fund." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir.2000). The determination of "reasonableness" is within the discretion of the district court. *Id.* There are two methods by which the district court may calculate reasonable attorneys' fees in class action cases, the lodestar method and the percentage method. *See Goldberger*, 209 F.3d at 50 (holding that both the lodestar and the percentage of the fund methods are permitted).

Under the lodestar method, the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed and then multiplies that figure by an appropriate hourly rate. Once that initial computation has been made, the district court may, in its discretion, increase the lodestar by applying a multiplier based on "other less objective factors" such as the risk of the litigation and the performance of the attorneys and the result accomplished. Under the percentage method,

the court sets some percentage of the recovery as the fee. In determining what percentage to award, courts have looked to the same "less objective" factors that are used to determine the multiplier for the lodestar.

The trend in the Second Circuit is to use the percentage method. *In re American Bank Note*, 127 F.Supp.2d 418, 431 (S.D.N.Y.2001) ("Although the law in the Circuit has not been uniform, the trend of the district courts in this Circuit is to use the percentage of the fund approach to calculate attorneys' fees."). Courts favor the percentage of the fund method because lodestar "created an unanticipated disincentive to early settlements," tempted lawyers to run up their hours, and "compell[ed] district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger*, 209 F.3d at 48–49; *see In re American Bank Note*, 127 F.Supp.2d at 431–32. The Second Circuit recommends analyzing the documentation of the hours submitted by counsel as a "cross check" on the reasonableness of the requested percentage. *Goldberger*, 209 F.3d at 50.

In *Goldberger*, the Second Circuit affirmed an attorneys' fees award of 4% of the common fund and criticized courts who have used 25% (less than the 33⅓% requested here) as a benchmark for attorneys' fees, because that percentage presumes "a substantial contingency risk in every common fund case." *Goldberger*, 209 F.3d at 52. "Anecdotal evidence tends to confirm" the conclusion of an empirical study that "there appears to be no appreciable risk for non-recovery" in securities class actions. *Id.* at 57 ("[O]ur nagging suspicion is that attorneys in these cases are routinely overcompensated for such things as contingency risk.").

■ Under either the lodestar or the percentage method, courts should pay attention to the following factors: (1) the time and expertise required of counsel, (2) the magnitude and complexities of the litigation, (3) the risks involved in the litigation, (4) the quality of the representation, (5) the requested fee in relation to the settlement, and (6) public policy considerations. *See id.* at 50. Moreover, the Second Circuit has stated that courts should consider the "overarching concern for moderation," *id.* at 53, and directed that courts set the attorneys' fees percentage largely according to the actual contingency risk. *See id.* at 54 ("We have historically labeled the risk of success as 'perhaps the foremost factor' to be considered in determining whether to award an enhancement.").

### 1. The Risks involved in the Litigation

■ Counsel argue that the contingency risk was significant, principally because the plaintiffs would have difficulty proving that the defendants made misstatements or omissions that were material to the market and that those misstatements or omissions caused the plaintiffs to suffer damages. Affidavit of Sanford P. Dumain ("Dumain Affidavit") ¶ 29. However, the plaintiffs have already survived motions to dismiss the causes of action in the complaint relating to the allegations of fraud and misrepresentation.

Furthermore, after the Court decided the motions to dismiss on July 5, 2000, the parties reached a memorandum of understanding to settle this matter fairly shortly thereafter. *See* Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of the Settlement and Plan of Allocation ("Plaintiffs' Memorandum for Final Approval of Settlement"), at 8 (stating that the parties reached a memorandum of understanding to settle this matter on March 5, 2001). Accordingly, these facts indicate that counsel's argument that the case in-

volved a significant contingency risk is somewhat overstated.

Counsel also contend that they accepted this case on a contingency fee basis and could have expended millions of dollars in attorney time and received no compensation. Dumain Affidavit ¶¶ 49, 50. However, this argument does not go to the merits of this particular case but rather applies equally to every contingency fee case that a plaintiff's attorney takes. Finally, in this case, apparently, there was no ground breaking issue which loomed significant. Accordingly, the most important factor in our analysis which is the contingency risks involved in the litigation weighs against awarding a more substantial fee in this matter.

### 2. The Time and Expertise Required of Counsel

Counsel submit that collectively the approximately 14 law firms involved in this litigation for the plaintiffs devoted over 7,750 hours to the prosecution of this matter. Counsel represent that these hours establish a lodestar of more than $2,462,537.50. The 33⅓% requested by counsel constitutes a multiplier of about 3.5 times lodestar.

It should be noted that the discovery, investigation and research by counsel consisted of the "investigation of tens of thousands of pages of documents produced by Defendants and third parties, interviews with three Twinlab executives, including two of the Individual Officer Defendants, and consultations with accountant and damage experts." *Id.* ¶ 16. Counsel responded to 5 separate motions to dismiss the complaint. It is important to note that no depositions took place. That is unusual in this type of case in view of the substantial settlement; it is almost remarkable. After the motions to dismiss were decided by the Court, the parties reached a memo-

randum of understanding to settle this matter on March 5, 2001. *See* Plaintiffs' Memorandum for Final Approval of Settlement, at 8. Accordingly, the Court finds that counsel did not invest significant time and resources in depositions, trial or appeal.

### 3. The Magnitude and Complexities of the Litigation

In somewhat conclusory fashion, counsel argue that they successfully guided a complex and challenging litigation and settlement negotiations. Dumain Affidavit ¶ 54.

### 4. The Quality of Representation

The Dumain Affidavit states that counsel are experienced and skilled practitioners in the field of securities litigation. *Id.* ¶ 55. The Court accepts this fact. There was great quality in the representation.

### 5. The Requested Fee in Relation to the Settlement

The requested fee in relation to the settlement is significant. Counsel seek to recover almost $9 million from a settlement figure of $26.5 million. This amount is more than 3.5 times the actual amount that counsel would have billed on the case.

### 6. Public Policy Considerations

Counsel argue that:

it is in the public interest to have experienced and able counsel enforce the securities laws and regulations. The SEC, a vital but understaffed government agency, does not have the budget or manpower to ensure complete enforcement of the securities laws. If this important public policy is to be carried out, the courts must award fees that will adequately compensate Plaintiffs' Counsel, taking into account the enormous risk

undertaken with a clear view of the economics of the situation.

Dumain Affidavit ¶ 52. As stated below, this argument is not persuasive. *See Dreyfus Aggressive Growth Mutual Fund Litigation,* No. 98CV4318, 2001 WL 709262, at *4 (S.D.N.Y. June 22, 2001) ("What empirical data does exist indicates that all but a small percentage of class actions settle, thereby guaranteeing counsel payment of fees and minimizing the risks associated with contingency fee litigation.") (citing S.Rep. No. 104–98, at 9 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 687) (estimating that about 300 securities lawsuits are filed each year and that 93% of these cases reach settlements averaging $8.6 million). Accordingly, public policy may not be the major reason for bringing a securities fraud class action.

Applying the "principles of moderation" urged by the Second Circuit in *Goldberger,* the Court awards a percentage of 12% of the recovery, namely the sum of $3,178,307.10, which is somewhat greater than counsel's represented lodestar. True, counsel undertook a risk in taking the case. However, the determination that 12% is a reasonable fee follows the emerging trend within the Second Circuit of awarding attorneys considerably less than 30% of common funds in securities class actions, even where there is considerable contingency risk. *See Goldberger,* at 54 (lodestar award equal to 4% of the common fund); *Varljen v. H.J. Meyers & Co.,* 2000 WL 1683656 at *5 (S.D.N.Y.2000) (awarding 20%); *In re: Fine Host Corp.,* 2000 WL 33116538 at *5 (D.Conn.2000) (17.5%); *In re: American Bank Note Holographics, Inc.,* 127 F.Supp.2d 418 (S.D.N.Y.2001) (rejecting a 30% claim and awarding 25%); *compare Steiner v. Williams,* 2001 WL 604035 at *7 (S.D.N.Y. 2001) (awarding 30% because plaintiffs' argument was "novel and risky" and because "counsel took a tremendous risk that, in

the end, nothing would be recovered"). Here, the settlement was achieved at a relatively early stage and did not require deposition discovery—the major attorney time user.

### 7. The Lodestar "cross-check"

The Lodestar analysis, which the Second Circuit encouraged as a "cross-check" on the reasonableness of the requested percentage, *Goldberger,* 209 F.3d at 50, confirms the appropriateness of a 12% award in this case. 33⅓%, counsel's requested award, is equal to the aggregated dollar value of their time multiplied by 3.58. This multiplier raises red flags for a number of reasons. First, the award of such a multiplier is inconsistent with post-*Goldberger* courts which have generally refused multipliers as high as 2.03. *See Goldberger,* at 54 (no multiplier); *Varljen v. H.J. Meyers & Co.,* 2000 WL 1683656 at *5 (S.D.N.Y.2000) (refusing to award 1.6 multiplier).

Second, the time documentation indicates that counsel's lodestar of $2,462,537.50 is excessive, not because counsel ran up their time, but, because counsel calculated the lodestar using partner billing rates for a large percent of the time worked on the case, regardless of whether an associate or a paralegal could have performed the work at a fraction of the price.

Third, counsel's lodestar calculation is based on attorney fees for partners ranging from $615 to $340 per hour. Even more remarkably, certain associates billed at $410 and $340 per hour and certain paralegals billed at $205 and $180 per hour. Based upon the billing rates, the Court is well within its authority to reduce the billable rates under the lodestar method. *See Savino v. Computer Credit, Inc.,* 164 F.3d 81, 87 (2d Cir.1998) (upholding

court rates of $200 per hour for partners, $135 per hour for associates and $50 per hour for paralegals).

It should be noted that on January 3, 2002, one Douglas A. Cole, the attorney on behalf of Larry Pace, filed an objection in this matter to the award of attorneys' fees in excess of 25%. On February 20, 2002, counsel submitted a letter and stipulation of the withdrawal of the objection by Mr. Pace. Counsel noted in their letter that they will reimburse Mr. Cole $33,897.18 in time and expenses undertaken by Mr. Cole to file his 16 page objection. In comparison to the class (which is estimated to receive about $1.09 per damaged share), Mr. Cole will earn considerably more than many if not most of the members of the class by simply having filed an objection to the award of attorneys' fees.

Moreover, Mr. Cole's suggestion that 25% ($6,621,147.20) is a reasonable fee for the Court to award should not even be noted as an objection. The Court finds that a 25% fee in this matter would be excessive considering that the parties did not engage in extensive discovery, motion practice, trial or appeals and that the action was settled shortly after the motions to dismiss were decided.

In sum, an award of attorneys' fees of 12% ($3,178,307.10) is more than adequate in this matter.

### E.   Reimbursement of Litigation Expenses

Counsel are entitled to reasonable litigation expenses. *See Miltland Raleigh–Durham v. Myers,* 840 F.Supp. 235, 239 (S.D.N.Y.1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients."). Counsel request reimbursement of litigation expenses in the amount of $134,043.36. Most of the litigation expenses appear reasonable.

However, certain firms have included an expense for a undefined litigation fund. For example under litigation fund, Schiffrin & Barroway, LLP submitted an amount of $20,000; Berger & Montague, P.C. submitted an amount of $5,000; and Pomerantz Haudek Block Grossman & Gross LLP submitted an amount of $5,000. At the hearing before this Court on February 22, 2002, counsel advised the Court that these amounts were fully used as expenses in the litigation of this case. Accordingly, the Court awards counsel $134,043.36, the full amount requested, as reasonable litigation expenses in this matter.

After the Court rendered its decision orally from the bench, counsel requested that the Court reconsider its decision with respect to the award of attorneys' fees. The Court grants this request but adheres to it initial decision.

### III.   CONCLUSION

Based upon the foregoing, it is hereby

**ORDERED,** that this action be finally certified as a class action under Federal Rules of Civil Procedure 23(a) and (b); and it is further

**ORDERED,** that the Settlement Agreement is approved; and it is further

**ORDERED,** that judgment be entered dismissing the complaint on the merits and with prejudice; and it is further

**ORDERED,** that the allocation plan is approved; and it is further

**ORDERED,** that counsel for the plaintiffs be awarded attorneys' fees of 12% of the settlement, namely the sum of $3,178,307.10; and it is further

**ORDERED,** that counsel for the plaintiffs be awarded litigation expenses of $134,043.36; and it is further

**ORDERED,** the Clerk of the Court is directed to close this case.

**SO ORDERED.**