FEUERSTEIN, District Judge
I. INTRODUCTION
Plaintiffs Linda J. Kindle and Michael Brewley brought this class action on behalf of themselves and other similarly situated participants in the Atrium Management Services, Inc. Employee Stock Ownership Plan (the "ESOP") who received an allegedly deficient cash distribution following the ESOP's termination on July 1, 2011.[1] Plaintiff alleges that Defendants Peter Dejana ("Dejana"), William F. Wynperle, Jr., Atrium Management Services, Inc. ("Atrium"), Administrative Committee for the Atrium Management Services, Inc. Employee Stock Ownership Plan (the "ESOP Committee"), John Sipala, and Saddle Creek, LLC ("Saddle Creek") (John Sipala and Saddle Creek, collectively the "Sipala Defendants") breached their fiduciary duties to Plaintiffs and other ESOP participants in connection with the valuation and sale of ESOP assets, in violation of Section 404 of the Employee Retirement and Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1104, 1132. Plaintiffs also allege that all Defendants violated Section 406 of ERISA, 29 U.S.C. § 1106, which prohibits certain interested-party transactions, in connection with the same sale and purchase of ESOP assets. See generally Second Amended Class Action Complaint ("SAC") [DE 72]. Following the parties' cross-motions for summary judgment, both of *703 which were denied, see DE 120, the case proceeded to a bench trial. On September 5, 2017, during the first day of testimony, the parties entered into a stipulation which was placed on the record. See also DE 150-5 (Trial Transcript). The terms of the stipulation, in part, provided for the appointment of a Special Master to provide a neutral valuation of the "fair market of a 100% ownership interest in Atrium as of December 30, 2011." DE 150-4 (Report of Special Master); see DE 150-5. Following the Special Master's valuation, see DE 149, the Plaintiff filed the instant motion seeking attorneys' fees and costs. DE 150. Defendant Dejana opposes the motion, in part. See DE 151. For the reasons that follow, Plaintiff's motion is GRANTED, in part, and DENIED, in part, in accordance with this Memorandum and Order.
II. PLAINTIFF'S MOTION FOR ATTORNEYS' FEES & COSTS [2]
A. Applicable Law
1. Attorneys' Fees
Both the Second Circuit and the Supreme Court have held that "the lodestar method-the product of a reasonable hourly rate and the reasonable number of hours required by the case-creates a 'presumptively reasonable fee.' " Millea v. Metro-North R.R. Co. , 658 F.3d 154, 166 (2d Cir. 2011) (quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany , 522 F.3d 182, 183 (2d Cir. 2007) ). Generally, courts should determine the "presumptively reasonable fee" by looking to "what a reasonable paying client would be willing to pay." Arbor Hill , 522 F.3d at 183-84.
"[W]hether the calculation is referred to as the lodestar or the presumptively reasonable fee, courts will take into account case-specific factors to help determine the reasonableness of the hourly rates and the number of hours expended." Pinzon v. Paul Lent Mechanical Sys. , No. 11 Civ. 3384, 2012 WL 4174725, at *5 (E.D.N.Y. Aug. 21, 2012), adopted by 2012 WL 4174410 (E.D.N.Y. Sept. 19, 2012). These factors include:
[T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.
Arbor Hill , 522 F.3d at 184. "The party seeking reimbursement of attorneys' fees must demonstrate the reasonableness and necessity of hours spent and rates charged." Finkel v. Omega Comm'n Svcs., Inc. , 543 F.Supp.2d 156, 164 (E.D.N.Y. 2008) (citing New York State Ass'n for Retarded Children, Inc. v. Carey , 711 F.2d 1136 (2d Cir. 1983) ).
In determining what constitutes a reasonable hourly rate, courts in this Circuit generally adhere to the forum rule, which states that a district court should generally use the prevailing hourly rates in the district where it sits. See *704 Restivo v. Hessemann , 846 F.3d 547, 590 (2d Cir. 2017), cert. denied , --- U.S. ----, 138 S.Ct. 644, 199 L.Ed. 2d 528 (2018) ; Simmons v. N.Y. City Transit Auth. , 575 F.3d 170, 175-76 (2d Cir. 2009) ; Polk v. N. Y. State Dep't of Corr. Servs. , 722 F.2d 23, 25 (2d Cir. 1983) ; see also Joseph v. HDMJ Restaurant, Inc. , 970 F.Supp.2d 131, 155 (E.D.N.Y. 2013) (internal citations omitted). "Courts in the Eastern District of New York [typically] award hourly rates ranging from $200 to $450 per hour for partners, $100 to $300 per hour for associates, and $70 to $100 per hour for paralegals." Houston v. Cotter , 234 F.Supp.3d 392, 402 (E.D.N.Y. 2017) (quoting D'Annunzio v. Ayken, Inc. , No. 11-CV-3303, 2015 WL 5308094, at *4 (E.D.N.Y. Sept. 10, 2015) ); United States ex rel. Joseph F. Tommasino, P.A., PhD v. Guida , No. 10 CV 4644, 2017 WL 878587, at *3 (E.D.N.Y. Mar. 6, 2017) ; Small v. New York City Transit Auth. , No. 09 Civ. 2139, 2014 WL 1236619, at *5 (E.D.N.Y. Mar. 25, 2014) (internal quotations omitted).
Notwithstanding application of the forum rule and in light of the numerous factors that courts in this circuit consider to determine a reasonable hourly rate, "the range of 'reasonable' attorney fee rates in this district varies depending on the type of case, the nature of the litigation, the size of the firm, and the expertise of its attorneys." U.S. ex rel. Joseph F. Tommasino, P.A., PhD, et al. v. Guida , No. 10-cv-4644, 2017 WL 878587, at *3 (E.D.N.Y. Mar. 6, 2017) (quoting Siracuse v. Program for the Dev. of Human Potential , No. 07-CV-2205, 2012 WL 1624291, at *30 (E.D.N.Y. Apr. 30, 2012) ). Moreover, the Second Circuit has explicitly authorized district courts to utilize "an out-of-district hourly rate-or some rate in between the out-of-district rate sought and the rates charged by local attorneys-in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections , 522 F.3d 182, 191 (2d Cir. 2008) (recognizing that "where circumstances have warranted it, we have not insisted on strict adherence to the forum rule"). Therefore, the forum rule's presumption concerning the range of reasonable rates within the district "may be rebutted-albeit only in the unusual case-if the party wishing the district court to use a higher rate demonstrates that his or her retention of an out-of-district attorney was reasonable under the circumstances as they would be reckoned by a client paying the attorney's bill." Id. ; Restivo , 846 F.3d at 590 ("[T]o rebut the presumption that the forum rule applies, the party seeking higher fees must make a particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result").
As to whether the hours expended by counsel are reasonable, the Court must "use [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonableness of the hours spent ... in a given case." Fox Indus., Inc. v. Gurovich , No. 03 Civ. 5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting Clarke v. Frank , 960 F.2d 1146, 1153 (2d Cir. 1992) ). A court should "exclude hours that were 'excessive, redundant, or otherwise unnecessary' to the litigation ...." Cho v. Koam Medical Servs. P.C. , 524 F.Supp.2d 202, 209 (E.D.N.Y. 2007) (quoting Hensley v. Eckerhart , 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ); Barbu v. Life Ins. Co. of N. Am. , No. 12-CV-1629, 2015 WL 778325, at *4 (E.D.N.Y. Feb. 24, 2015). Likewise, where counsel relies on vague / excessive entries or block billing practices *705 which make it difficult for a court to assess reasonableness, an across-the-board fee reduction is warranted. Anderson v. Cty. of Suffolk , No. CV 09-1913, 2016 WL 1444594, at *6 (E.D.N.Y. Apr. 11, 2016) (recognizing that where "counsel relies on vague entries and block billing, courts are unable to review hours for reasonableness" and noting that "[c]ourts have imposed reductions as high as 40% based solely on vague billing entries"); see Barbu , 2015 WL 778325, at *5 (imposing a 33% reduction in total hours based upon vague entries and block billing); Caban v. Employee Sec. Fund of the Elec. Products Indus. Pension Plan , No. 10-CV-389, 2015 WL 7454601, at *8 (E.D.N.Y. Nov. 23, 2015) (33% reduction in overall hours spent due to block billing, vague entries, and excessive time spent on certain routine tasks); Gagasoules v. MBF Leasing LLC , 296 F.R.D. 107, 112 (E.D.N.Y. 2013) (40% reduction due to vague and unrelated entries).
2. Costs
Courts typically award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." Reichman v. Bonsignore, Brignati & Mazzotta, P.C. , 818 F.2d 278, 283 (2d Cir. 1987) ; Sheet Metal Workers Nat'l Pension Fund v. Evans , No. 12 Civ. 3049, 2014 WL 2600095, at *11 (E.D.N.Y. Jun. 11, 2014). However, the party seeking reimbursement of its costs carries the burden of providing the Court adequate substantiation in the form of receipts and other documents not only showing such costs were incurred, but that they were paid. See Lee v. Santiago , No. 12 CIV. 2558, 2013 WL 4830951, at *5 (S.D.N.Y. Sept. 10, 2013) ("[I]t is [ ] the requesting party's burden to support its application, and this means that the requested costs must be substantiated ... A mere assertion that a certain cost was incurred, though, is insufficient, where such an assertion is made in a conclusory fashion in a brief or bill of costs, without a supporting affidavit, declaration, or documentation."); Volpe v. Nassau Cty. , No. 12 CV 2416, 2016 WL 6238525, at *10 (E.D.N.Y. Oct. 24, 2016) ("The fee applicant bears the burden of adequately documenting and itemizing the costs requested.") (internal quotation omitted). Local Civil Rule 54.1 states that "the party must include as part of the request 'an affidavit that the costs claimed are allowable by law, are correctly stated and were necessarily incurred,' " and "[b]ills for the costs claimed must be attached as exhibits." Id. (quoting D.J. ex rel. Roberts v. City of New York , No. 11-CV-5458, 2012 WL 5431034, at *9 (S.D.N.Y. Oct. 16, 2012), report & recommendation adopted sub nom. Roberts v. City of New York , 2012 WL 5429521 (S.D.N.Y. Nov. 7, 2012) ). Generally, the only exception to this rule is where reimbursement is sought for a filing fee. In such cases, a Court may take judicial notice of the fact that the fee was paid by virtue of entries in the docket. See Douyon v. NY Med. Health Care, P.C. , 49 F.Supp.3d 328, 352 (E.D.N.Y. 2014), judgment entered sub nom. Douyon v. NY. Med. Health Care, P.C. , No. CV 10-3983, 2015 WL 5821499 (E.D.N.Y. Sept. 30, 2015) ("The Court takes judicial notice of the $350 filing fee reflected on the docket."); Lee v. Santiago , No. 12 CIV. 2558, 2013 WL 4830951, at *5 (S.D.N.Y. Sept. 10, 2013) ("Court fees that are reflected on the Court's docket are sufficiently substantiated").
B. Application to the Facts
1. Plaintiff's Entitlement to Attorneys' Fees & Costs
ERISA states, in relevant part, that "[i]n any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs *706 of action to either party." 29 U.S.C. § 1132(g)(1). The Second Circuit has opined that "ERISA's attorney's fee provisions must be liberally construed to protect the statutory purpose of vindicating retirement rights...." Locher v. Unum Life Ins. Co. of Am. , 389 F.3d 288, 298 (2d Cir. 2004). Notwithstanding the broad discretion afforded to district courts in determining whether to allow the award of reasonable fees and costs, the Supreme Court has made clear that such discretion is not unfettered. In Hardt v. Reliance Standard Life Ins. Co. , the Supreme Court determined that a "fees claimant must show some degree of success on the merits before a court may award attorney's fees under § 1132(g)(l) [.]" Hardt v. Reliance Standard Life Ins. Co. , 560 U.S. 242, 255, 130 S.Ct. 2149, 2158, 176 L.Ed. 2d 998 (2010) ; see Donachie v. Liberty Life Assur. Co. of Boston , 745 F.3d 41, 46 (2d Cir. 2014) ("The Supreme Court has nonetheless cautioned that a district court's discretion to award attorneys' fees under ERISA is not unlimited, inasmuch as it may only award attorneys' fees to a beneficiary who has obtained some degree of success on the merits."). Following the decision in Hardt , the Second Circuit recognized that "whether a plaintiff has obtained some degree of success on the merits is the sole factor that a court must consider in exercising its discretion." Donachie , 745 F.3d at 46 (emphasis in original). Therefore, "once a court determines that a plaintiff has achieved some degree of success on the merits, it is not required to, but may in its discretion, consider other factors in determining whether to award attorneys' fees." Dimopoulou v. First Unum Life Ins. Co. , No. 1:13-CV-7159, 2017 WL 464430, at *1 (S.D.N.Y. Feb. 3, 2017) (emphasis in original); Severstal Wheeling, Inc. v. WPN Corp. , No. 10 CIV 954, 2016 WL 1611501, at *2 (S.D.N.Y. Apr. 21, 2016).[3]
Although achieving a purely procedural victory or only trivial success on the merits is generally insufficient to meet the "success on the merits standard," this requirement is met "if the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquir[y] into the question whether a particular party's success was substantial or occurred on a central issue." Hardt , 560 U.S. at 255, 130 S.Ct. at 2158, 176 L.Ed. 2d 998 (internal quotations and citation omitted) (alteration in original); see Scarangella v. Grp. Health, Inc. , 731 F.3d 146, 152 (2d Cir. 2013) ; Easter v. Cayuga Med. Ctr. at Ithaca Prepaid Health Plan , No. 514 CV 1403, 2017 WL 3267922, at *1 (N.D.N.Y. July 31, 2017). Indeed, the Second Circuit has recognized that this standard "appears to have left room for many factual scenarios to satisfy the standard of some success on the merits." Scarangella , 731 F.3d at 152.
As an initial matter, the parties' stipulated agreement in no way forecloses the possibility of a fee award. See DE 150-5. In fact, the agreement expressly provides that "[w]ithin 14 calendar days from receipt of the Special Master's report, plaintiff may apply for fees, costs, disbursements, and any service award." Id. In addition, Dejana has not objected to Plaintiff's *707 entitlement to fees in the first instance, but only the overall amount of fees requested. See generally Peter Dejana's Statement in Limited Opposition to Plaintiff's Fee Request ("Def's. Opp'n"). Finally, having presided over this case from its inception through settlement, the Court finds that Plaintiff has met the "some success on the merits standard" in light of the stipulated terms, which resulted in a recovery of $1,080,000 for the Class (the differential between the amount Dejana paid the ESOP for its stock versus the stock's fair market value as of the December 30, 2011 valuation date) as well as $332,136.99 in prejudgment interest for a total recovery of $1,412,136.99. See DE 150-4, 150-5; see also Plaintiff's Memorandum of Law in Support of Motion for Attorneys' Fees, Costs, Disbursements and Class Representative Fee Award ("Pl's. Mem.") at 7. In light of this finding, the Court, in its discretion, declines to consider the Chambless factors. See Dimopoulou , 2017 WL 464430, at *2 (recognizing that plaintiff had achieved "some success on the merits" and, on that basis, "declin[ing] to consider the Chambless factors"); Badalamenti v. Country Imported Car Corp. , No. CV 10-4993, 2015 WL 1862854, at *5 (E.D.N.Y. Apr. 23, 2015) (same).
2. Lodestar or Percentage of the Fund Method
Dejana advocates that in calculating the presumptively reasonable fee, the Court should rely upon the percentage of the fund method and eschew the lodestar approach. See Def's. Opp'n at 1-2. Specifically, Dejana maintains that "Plaintiff's fee award should be calculated as 33% of the recovery obtained for the class, or $360,000." Id. at 2. Plaintiff responds that (1) "both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees in common fund cases;" (2) the district court case relied upon by Dejana is distinguishable; (3) "Dejana ignores the key distinction between the lodestar and percentage of the common fund methods in the context of a fee-shifting statute such as ERISA: whether the defendants or the class members foot the bill for attorney's fees;" and (4) "awarding lodestar attorneys' fees is also consistent with ERISA's fiduciary standards." Reply Brief in Support of Plaintiff's Motion for Attorneys' Fees, Costs, Disbursements and Class Representative Service Award ("Pl's. Reply") at 2-5.
In cases involving a common fund, the calculation of what constitutes a "reasonable" fee involves utilizing one of two distinct calculation methodologies-the percentage of the fund approach or the lodestar approach. See Goldberger v. Integrated Res, Inc. , 209 F.3d 43, 47 (2d Cir. 2000) ; Knapp v. Badger Tech. , 12-CV-6637, 2015 WL 3745303, at *4 (W.D.N.Y. June 15, 2015) ; In re Partsearch Tech., Inc. , 453 B.R. 84, 105 (S.D.N.Y. 2011) ; Flores v. Mamma Lombardi's of Holbrook, Inc. , 104 F.Supp.3d 290, 308-09 (E.D.N.Y. 2015) (recognizing that both the percentage of the fund method as well as the lodestar approach are viable means for determining whether a fee is "reasonable" but ultimately utilizing the lodestar method); Lizondro-Garcia v. Kefi LLC , No. 12 Civ. 1906, 2015 WL 4006896, at *3 (S.D.N.Y. July 1, 2015) ("[I]t remains the law in this Circuit that courts may award attorney's fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method.") (internal quotations and citations omitted); Manley v. Midan Rest. Inc. , No. 14 CIV. 1693, 2017 WL 1155916, at *7 (S.D.N.Y. Mar. 27, 2017)
The lodestar method requires the court to "scrutinize[ ] the fee petition to ascertain the number of hours reasonably *708 billed to the class and then [to] multipl[y] that figure by an appropriate hourly rate. Goldberger , 209 F.3d at 47 ; Wal-Mart Stores, Inc. v. Visa U.S.A., Inc. and Mastercard Int'l, Inc. , 396 F.3d 96, 121 (2d Cir. 2005) ; In re Partsearch Tech., Inc. , 453 B.R. at 105. Upon arriving at this calculation, the court has discretion to determine whether the lodestar should be increased through the use of a multiplier based on factors such as the risk of litigation and overall performance of the attorneys. Goldberger , 209 F.3d at 47 ; Wal-Mart Stores, Inc. , 396 F.3d at 121 ; Lizondro-Garcia , 2015 WL 4006896, at *3 (recognizing that though there is a presumption that the lodestar is reasonable, a multiplier may be appropriate in certain circumstances). In addition, "[b]oth the Second Circuit and the Supreme Court have held that the lodestar ... creates a 'presumptively reasonable fee.' " Flores , 104 F.Supp.3d at 309 (quoting Millea v. Metro-North R. Co. , 658 F.3d 154, 166 (2d Cir. 2011) ). This presumptively reasonable fee constitutes "what a reasonable paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." Simmons v. N.Y. City Transit Auth. , 575 F.3d 170, 174 (2d Cir. 2009).
In contrast, the percentage of the fund method requires the court to assign "some percentage of the recovery as a fee." Goldberger , 209 F.3d at 47 ; Knapp , 2015 WL 3745303, at *5. In order to arrive at the proper percentage, "the court considers the effort expended and risks undertaken by plaintiffs' counsel and the results of those efforts, including the value of the benefits obtained for the class." Frank v. Eastman Kodak Co. , 228 F.R.D. 174, 188 (W.D.N.Y. 2005). Nevertheless, "the percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement." In re Indep. Energy Holdings PLC , No. 00 Civ. 6689, 2003 WL 22244676, at *6 (S.D.N.Y. September 29, 2003). Even where this method is used, courts are encouraged to perform a lodestar "cross-check" to ensure the percentage award is in fact reasonable. Goldberger , 209 F.3d at 50 ; Wal-Mart Stores, Inc. , 396 F.3d at 123.
The sole rationale proffered by Dejana for application of the percentage of the fund method is based upon Dejana's view that "Plaintiff's fee petition is an attempt to 'shoot for the moon' rather than a good faith effort to calculate reasonable fees." Def.'s Opp'n at 2. However, other than making this conclusory assertion, Dejana fails to articulate gross deficiencies permeating Plaintiff's billing records nor does he set forth particularized reasons why the overall fee requested by Plaintiff is patently unreasonable in light of the almost four (4) years of litigation that ensued in this case. In addition, to the extent Dejana relies on Badalamenti to advocate for the use of the percentage of the fund approach, such reliance is misplaced. In Badalamenti , the court would have preferred to utilize the lodestar approach but declined to do so only because of the "unreliable and contradictory information submitted by plaintiff's counsel ... which includes fees for matters that are clearly not compensable and fluctuating rates and hours, [making] it [ ] impossible to calculate a lodestar in these circumstances." Badalamenti , 2015 WL 1862854, at *5. In contrast, having reviewed the contemporaneous billing records submitted as part of Plaintiff's fee application, the Court harbors no such concerns. Likewise, Dejana does not assert that these billing records are unreliable or otherwise contradictory to such an extent that calculation of the lodestar would be a futile exercise. Therefore, the concerns at issue in Badalamenti are not present here. Finally, to the extent Dejana's argument can be interpreted to *709 suggest that a reasonable fee must be proportional to the recovery obtained, such a notion has been rejected by courts within this Circuit. See Badalamenti , 2015 WL 1862854, at *7 ("[T]he Court is mindful that it is ordinarily inappropriate for an award of attorneys' fee be proportional to the damages recovered under ERISA."); Mason Tenders Dist. Council v. Aurash Const. Corp. , No. 04 CIV. 2427, 2006 WL 647884, at *3 (S.D.N.Y. Mar. 15, 2006) ("Success in an ERISA action is not measured solely by the amount of damages awarded, and there is no requirement that the amount of an award of attorney's fees under ERISA ... be proportional to the amount of damages awarded."); see also Cowan v. Prudential Ins. Co. of Am. , 935 F.2d 522, 526 (2d Cir. 1991) (recognizing in the context of an action brought pursuant to 42 U.S.C. § 1988 that "[a] presumptively correct 'lodestar' figure should not be reduced simply because a plaintiff recovered a low damage award."). Based upon the foregoing, the lodestar approach will be used in order to calculate the presumptively reasonable fee. See McDaniel v. Cty. of Schenectady , 595 F.3d 411, 417 (2d Cir. 2010) ("[I]t remains the law in this Circuit that courts may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method.").[4]
3. Application of the Lodestar Method
Having determined that Plaintiff is entitled to an award of reasonable attorneys' fees and costs and that the lodestar method will be utilized in calculating the same, the next step requires calculation of the presumptively reasonable fee based upon Plaintiff's submissions as well as the legal principles set forth in Section II.A.1, supra. See Laboy v. Office Equip. & Supply Corp. , No. 15 CIV 3321, 2016 WL 5462976, at *16 (S.D.N.Y. Sept. 29, 2016), report and recommendation adopted , 2016 WL 6534250 (S.D.N.Y. Nov. 2, 2016) ("As the fee applicant, plaintiff 'bears the burden of documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed.' ") (quoting General Elec. Co. v. Compagnie Euralair , S.A., 96 Civ. 0884, 1997 WL 397627, at *4 (S.D.N.Y. July 3, 1997) ).
i. Reasonable Hourly Rate
Plaintiff has been represented in this litigation by the law firms of Feinberg, Jackson, Worthman & Wasow LLP ("FJWW")[5] and Siri & Glimstad LLP ("S & G"). Declaration of Daniel Feinberg in Support of Plaintiff's Motion for Attorneys' Fees, Costs, Disbursements and Class Representative Service Award ("Feinberg Decl") ¶ 1. FJWW, in conjunction with its predecessor, LFLJ has been involved with ERISA litigation since 1976. Id. ¶ 11. Although it maintains its office in Oakland, California, FJWW "has engaged in litigation and consulting work throughout the United States on behalf of participants, plans, unions, trustees and other fiduciaries, and service providers." Id. The range of the FJWW's ERISA practice includes "all aspects of employee benefits, including benefit entitlement, fiduciary responsibility, plan design and administration, federal preemption, service-provider malpractice, prohibited transactions, and compliance *710 with the requirements of the Department of Labor, Pension Benefit Guaranty Corporation, IRS and other regulatory agencies." Id. In addition, "FJWW is recognized as one of the premier firms litigating ERISA fiduciary claims related to Employee Stock Ownership Plans (ESOPs)." Id. ¶ 12. The following charts represent, respectively, the FJWW and LFLJ attorneys and support staff who worked on this matter, their respective positions and years of experience, the hourly rates requested and the numbers of hours each individual worked on this matter:
Name FJWW Hourly Rate Number of Total Position Title/ Requested Hours Billed Experience Requested Daniel Feinberg Partner - 30 $600.00 793.20 $475,920.00 years experience Todd Jackson Partner - 20 $550.00 161.80 $88,990.00 years experience Catha Worthman Partner - 14 $500.00 5.10 $2,550.00 years experience Darin Ranahan Associate - 8 $350.00 10.80 $3,780.00 years experience Alyssa Villanueva Associate - 2 $200.00 31.80 $6,360.00 years experience Olivia Ruiz Paralegal $100.00 17.20 $1,720.00 Totals 1019.90 $579,320.00 Name LFLJ Hourly Rate Number of Total Position Title/ Requested Hours Billed Experience Requested Daniel Feinberg Partner - 30 $600.00 330.10 $198,060.00 years experience Catha Worthman Partner - 14 $450.00 .90 $405.00 years experience Andrew Lah Associate - 14 $350.00 58 $20,300.00 years experience Michael Caesar Associate - 7 $300.00 18.60 $5,580.00 years experience *711 Linda Lam Associate - 4 $200.00 11.0 $2,200.00 years experience Danica Li Law Clerk $100.00 8.1 $810.00 Galen Ages Law Clerk $100.00 5.0 $500.00 John Tremblay Law Clerk $100.00 12.60 $1,260.00 Shae Blood Law Clerk $100.00 5.2 $520.00 Jeffrey Lais Paralegal $100.00 137.60 $13,760.00 Elizabeth Keenley Paralegal $100.00 75.10 $7,510.00 Totals 662.20 $250,905.00 FJWW & LFLJ 1682.10 $830,225.00 Grand Totals
See generally id. ¶¶ 14-33, Ex. 8 (FJWW billing records); Ex. 9 (LFLJ billing records). In addition to FJWW (and its predecessor LFLJ), Plaintiff also secured S & G as co-counsel. The following chart represents the S & G attorneys and support staff who worked on this matter, their respective positions and years of experience, the hourly rates requested and the numbers of hours each individual worked on this matter:
Name S&G Hourly Rate Number of Total Position Title/ Requested Hours Billed Experience Requested Aaron Siri Partner - 14 $450.00 389.40 $175,230.00 years experience Mason Barney Partner - 13 $450.00 158.80 $71,460.00 years experience Kimberly Hertz Paralegal $100.00 55.20 $5,520.00 Totals 603.40 $252,210.00
See generally Declaration of Aaron Siri in Support of Plaintiff's Motion for Attorneys' Fees, Costs, Disbursements and Class Representative Service Award ("Siri Decl.") ¶¶ 1-11; Feinberg Decl., Ex. 10 (S & J billing records).
Strict application of the forum rule would require that the hourly rates for attorneys Daniel Feinberg, Todd Jackson, Cara Worthman, Darin Ranahan and Andrew Lah be decreased to no more than $450.00 per hour (for partners) and $300 per hour (for associates). See Houston , 234 F.Supp.3d at 402 (recognizing that courts in the Eastern District of New York typically "award hourly rates ranging from $200 to $450 per hour for partners [and] $100 to $300 per hour for associates"); D'Annunzio , 2015 WL 5308094, at *4 (same). In support of Plaintiff's request for the application of higher rates, he asserts that "it was necessary for Plaintiff to retain out-of-district counsel with special expertise because there are no plaintiff-side attorneys in the Eastern District of New York with experience in litigating ESOP class actions similar to this case." Pl.'s Mem. at 11.[6] In order to substantiate this *712 assertion, Plaintiff has attached Declarations from practicing attorneys attesting to the fact that ERISA class action litigation involving breach of fiduciary duty and prohibited transaction claims related to the sale of an ESOP constitutes a specialized practice area requiring unique expertise and that there are currently no practitioners within the Eastern District handling such cases. See, e.g. , January 31, 2018 Declaration of Troy L. Kessler in Support of Plaintiff's Motion for Attorneys' Fees, Costs, Disbursements and Class Representative Service Award ("Kessler Decl.") ¶¶ 13-15 (stating that although his Long Island-based law firm "has litigated a wide range of employment class and collective actions, we have not litigated an ERISA class action," clarifying that "[i]f a prospective client contacted me about a potential ERISA class action arising from an ESOP transaction, I would refer the prospective client to an out-of-district firm" and noting that "[t]o my knowledge, no plaintiff-side attorney in this district has experience or expertise in ESOP class actions...."); February 1, 2018 Declaration of R. Joseph Barton in Support of Plaintiff's Motion for Attorneys' Fees, Costs, Disbursements and Class Representative Service Award ("Barton Decl.") ¶¶ 10-14 (stating that "[b]ased on more than 16 years of experience in litigating and trying ERISA cases, including ESOP's involving privately held stock, I am familiar with attorneys who regularly handle claims on behalf of participants and beneficiaries in ERISA-covered plans ... [and] [t]here are only a handful of attorneys and law firms who regularly represent participants in [such cases including] Dan Feinberg and Todd Jackson of [FJWW]" while also opining that "plan participants seeking representation in an ESOP class action in the Eastern District would have to retain out-of-district counsel in order to be represented by an attorney with experience and expertise in this area of law"); February 2, 2018 Declaration of David S. Preminger in Support of Plaintiff's Motion for Attorneys' Fees, Costs, Disbursements and Class Representative Service Award ("Preminger Decl.") ¶¶ 1, 10-12 (stating that he is "a member of the law firm of Keller Rohrback LLP" located in New York City, has practiced in the "employee benefits field ... since 1973 and is familiar with many other lawyers who practice in the field," that "[r]ates for partners at my firm who handle ERISA cases range from $550 to $915" while rates for associates "range from $300 to $500" and that these rates are "necessary because of the complicated nature of employee benefit litigation and ERISA"); February 5, 2018 Declaration of William D. Frumkin in Support of Plaintiff's Motion for Attorneys' Fees, Costs, Disbursements and Class Representative Service Award ("Frumkin Decl.") ¶¶ 1, 9-11 (White Plains, New York practitioner with approximately thirty (30) years of experience in ERISA litigation who charges an hourly rate of $700 while his partner, admitted to the New York bar in 2005, charges $500 per hour and stating that this rate was held to be reasonable in the case of Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund , 281 F.Supp.3d 833, 851-52 (N.D. Cal. 2017) ). *713 While these declarations are helpful at arriving at the reasonable hourly rate for those attorneys whose hourly rates fall outside of the upper limits prescribed by forum rule, ultimately "[t]he specific rate that is reasonable for a given attorney depends on such factors as the attorney's experience and expertise, the novelty and complexity of the issues presented, and the overall success achieved in the case." Hugee v. Kimso Apartments, LLC , 852 F.Supp.2d 281, 298 (E.D.N.Y. 2012) (quoting Brady v. Wal-Mart Stores, Inc. , 455 F.Supp.2d 157, 204 (E.D.N.Y. 2006) ). Having reviewed the supporting documentation, the Court finds that although Plaintiff has made a sufficient showing to rebut the presumption that the forum rule applies with respect to Attorney Feinberg, the submitted materials nevertheless fail to rebut the presumption as to Attorneys Jackson, Worthman, Ranahan and Lah. The materials provided as to these attorneys do not establish that their respective experience and expertise warrant hourly rates exceeding those otherwise mandated by the forum rule, especially in light of their overall limited involvement in this matter as compared with that of Attorney Feinberg. See Long v. HSBC USA INC. , No. 14 CIV. 6233, 2016 WL4764939, at *11 (S.D.N.Y. Sept. 13, 2016) (recognizing that the hourly rates requested by counsel were "too high" based upon "counsel's experience, skills and level of contribution to the work" and reducing the requested rates accordingly). Therefore, Attorney Feinberg is awarded the requested hourly rate of $600 while Attorneys Jackson, Worthman, Ranahan and Lah are awarded adjusted hourly rates as follows: $450 per hour for Attorney Jackson, $400 per hour for Attorney Worthman and $300 per hour for Attorneys Ranahan and Lah. See D'Annunzio , 2015 WL 5308094, at *4 (E.D.N.Y. Sept. 10, 2015) (citing Ferrara v. CMM Contracting LLC , 848 F.Supp.2d 304, 313 (E.D.N.Y. 2012) ) ("Courts in the Eastern District of New York award hourly rates ranging from $200 to $450 per hour for partners, [and] $100 to $300 per hour for associates[.]"); Roberts v. United Parcel Serv., Inc. , No. 13 CV 6161, 2016 WL 1425766, at *4 (E.D.N.Y. Mar. 16, 2016), report and recommendation adopted , No. 13-CV-6161, 2016 WL 1441318 (E.D.N.Y. Apr. 8, 2016) (same). The Court finds that these rates, which nevertheless fall within the upper end of the spectrum for what constitutes a reasonable rate within the Eastern District of New York, are fair and reasonable in light of the overall experience, skill and contribution that these attorneys made to this litigation. In addition, the rates being requested by Plaintiff for the remainder of those practitioners and support staff who worked on this matter are presumptively fair and reasonable since they fall within the acceptable range for this District and are otherwise reasonable based upon their respective contributions, skill and experience.
ii. Reasonable Number of Hours
When reviewing the overall reasonableness of a fee application, "a district court is not required to 'set forth item-by-item findings concerning what may be countless objections to individual billing items[.]' " Reiter v. Metro. Transp. Auth. of State of N.Y. , No. 01 CIV 2762G, 2007 WL 2775144, at *13 (S.D.N.Y. Sept. 25, 2007) (quoting Lunday v. City of Albany , 42 F.3d 131, 134 (2d Cir. 1994) ); see Kirsch v. Fleet St., Ltd. , 148 F.3d 149, 173 (2d Cir. 1998) (recognizing that "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed "as a practical means of trimming fat from a fee application") (internal citation omitted); Anello v. Anderson , 191 F.Supp.3d 262, 283 (W.D.N.Y. 2016) ("[T]he district court is not obligated to undertake a line-by-line review of [an] extensive fee application ... In that regard, *714 [a] court has discretion to impose an across-the-board reduction if an attorney has billed excessive, redundant, or unnecessary hours.") (internal citations omitted); Gagasoules , 296 F.R.D. at 111 ; see also Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona , 188 F.Supp.3d 333, 344 (S.D.N.Y. 2016) (" 'It is common practice in this Circuit to reduce a fee award by an across-the-board percentage where a precise hour-for-hour reduction would be unwieldy or potentially inaccurate.' ") (quoting Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank Austria Creditanstalt AG , No. 04-CV-3600, 2005 WL 3099592, at *7 (S.D.N.Y. Nov. 17, 2005), reconsideration denied , 2009 WL 3816976 (S.D.N.Y. Nov. 10, 2009) ).
The Court has conducted a thorough review of the contemporaneous billing records submitted by LFLJ, FJWW and S & G. Having done so, a ten percent (10%) across-the-board the fee cut is appropriate in order to mitigate instances of duplicative and unnecessary billing, which, despite counsel's best efforts, is an inherent issue in protracted litigation involving the retention of and contemporaneous work performed by multiple law firms. See Marshall v. Deutsche Post DHL , No. 13-CV-1471, 2015 WL 5560541, at *13 (E.D.N.Y. Sept. 21, 2015) ("In lieu of a line item review and reduction of counsel's time, the Court will impose an across-the-board percentage cut in hours of 10% in order to trim the excess from these billing entries."); Douyon , 49 F.Supp.3d at 351 ("In lieu of making minute adjustments to individual timekeeping entries, a court may make across-the-board percentage cuts in the number of hours claimed, 'as a practical means of trimming the fat from a fee application."); Finkel v. Metro. Sign & Maint. Corp. , No. 09 CV 4416(SJ), 2010 WL 3940448, at *16-17 (E.D.N.Y. Aug. 12, 2010) (finding that a ten percent across-the-board reduction was appropriate); Davis v. Eastman Kodak Co. , 758 F.Supp.2d 190, 202 (W.D.N.Y. 2010) ("[B]ased on my experience with the case and after review of the records submitted, I find that an across-the-board reduction of ten percent would be appropriate to eliminate duplicative or unnecessary time."); see also In re Agent Orange Prod. Liab. Litig. , 818 F.2d 226, 237 (2d Cir. 1987) ("the district court has the authority to make across-the-board percentage cuts in hours as a practical means of trimming fat from a fee application"); Torres v. Gristede's Operating Corp. , 519 Fed.Appx. 1, 4 (2d Cir. 2013) (noting "the recognized practice of percentage cuts as a practical means of trimming fat from a fee application").
In light of the foregoing, the following charts represent the adjusted hourly rates and number of hours resulting in the presumptively reasonable fee (i.e. , the lodestar) that will be awarded in this case.
*715 Name FJWW Adjusted Hourly Adjusted Adjusted Position Title/ Rate Number of Total Experience Hours Daniel Feinberg Partner - 30 $600.00 713.88 $428,238.00 years experience Todd Jackson Partner - 20 $450.00 145.62 $65,529.00 years experience Catha Worthman Partner - 14 $400.00 4.59 $1,836.00 years experience Darin Ranahan Associate - 8 $300.00 9.72 $2,916.00 years experience Alyssa Villanueva Associate - 2 $200.00 28.62 $5,724.00 years experience Olivia Ruiz Paralegal $100.00 15.48 $1,548.00 Totals 917.91 $505,791.00 Name LFLJ Adjusted Hourly Adjusted Adjusted Position Title/ Rate Number of Total Experience Hours Daniel Feinberg Partner - 30 $600.00 297.09 $178,254.00 years experience Catha Worthman Partner - 14 $400.00 .81 $324.00 years experience Andrew Lah Associate - 14 $300.00 52.20 $15,660.00 years experience Michael Caesar Associate - 7 $300.00 16.74 $5,022.00 years experience *716 Linda Lam Associate - 4 $200.00 9.90 $1,980.00 years experience Danica Li Law Clerk $100.00 7.29 $729.00 Galen Ages Law Clerk $100.00 4.50 $450.00 John Tremblay Law Clerk $100.00 11.34 $1,134.00 Shae Blood Law Clerk $100.00 4.68 $468.00 Jeffrey Lais Paralegal $100.00 123.84 $12,384.00 Elizabeth Keenley Paralegal $100.00 67.59 $6,759.00 Totals 595.98 $223,164.00 FJWW & LFLJ 1513.89 $223,955.00 Adjusted Totals Name S&G Adjusted Hourly Adjusted Total Position Title/ Rate Number of Billed Experience Hours Aaron Siri Partner - 14 $450.00 350.46 $157,707.00 years experience Mason Barney Partner - 13 $450.00 142.92 $64,314.00 years experience Kimberly Hertz Paralegal $100.00 49.68 $4,968.00 Totals 543.06 $226,989.00 Grand Total 2056.95 $955,944.00 Awarded
4. Costs
In addition to attorneys' fees, counsel seeks reimbursement of those costs and expenses incurred as an incident to this litigation. See Feinberg Decl ¶ 42. Specifically, counsel seeks a total of $102,896.34 which encompasses "fees paid to Plaintiff's valuation expert, deposition transcript fees, photocopying and mailing costs, process servers, courier and overnight delivery expenses, online legal research expenses, court reporters' fees, travel expenses, fees for converting documents obtained in discovery into the proper format for Plaintiff's document database, fees for vendor hosting the document database, preparation of trial exhibits and charts, and the Special Master's fees." Id. Defendant does not object to the reimbursement of costs in the requested amount. See Dejana's Opp'n at 1.
ERISA provides that an award of reasonable costs may be allowed, but that the ultimate decision is left to the sound discretion of the district court. 29 U.S.C. § 1132(g)(1) ; see Labarbera v. Clestra Hauserman, Inc. , 369 F.3d 224, 226 (2d Cir. 2004) ("The language of the statute is unequivocal: when an underlying ERISA action falls within the relevant subchapter, other than an action for delinquent contributions, a district court "in its discretion may allow a reasonable attorney's fee and costs of action to either party."). Although the Court would have preferred that substantiation of all requested costs, in the *717 form of invoices, had been provided as part of Plaintiff's fee application, in light of (1) the fact that Dejana does not object to the overall amount of costs being sought here (2) the fact that the costs are not being deducted from the common fund and (3) because the billing records otherwise provide an itemized breakdown of the costs incurred, which appear to be reasonable and would otherwise be invoiced to a fee paying client, the Court, in its discretion, awards counsel the requested costs in the amount of $102,896.34. See U.S. for Use & Benefit of Evergreen Pipeline Const. Co. v. Merritt Meridian Const. Corp. , 95 F.3d 153, 171 (2d Cir. 1996) ("[I]f costs are authorized, the determination of amounts is vested in the sound discretion of the district court."); Cutie v. Sheehan , No. 1:11-CV-66, 2016 WL 3661395, at *4 (N.D.N.Y. July 5, 2016).
5. Representative Service Award
Plaintiff also seeks a class representative service award in the amount of $10,000. See Feinberg Decl. ¶ 44; Pl.'s Mem. at 19-20. Dejana does not object to the service award. See Def.'s Opp'n at 1. Plaintiff, Michael Brewley, participated in various aspects of this litigation including attending and testifying at the trial on September 5, 2017, attending a deposition on March 3, 2016, meeting with counsel to prepare for deposition and trial testimony as well as providing counsel with documentation relating to the ESOP. Feinberg Decl. ¶ 44. Plaintiff asserts that his "contribution to the recovery obtained for the Class merits a service award of $10,000." Pl.'s Mem. at 20.
"[C]ourts have held that class representatives 'merit recognition for assuming the risk [associated with the litigation] for the sake of absent class members.' " Karic v. Major Auto. Companies, Inc. , No. 09 CV 5708, 2016 WL 1745037, at *7 (E.D.N.Y. Apr. 27, 2016) (quoting Guippone v. BH S & B Holdings, LLC , No. 09 CV 1029, 2011 WL 5148650, at *20 (S.D.N.Y. Oct. 28, 2011) ); see Bozak v. FedEx Ground Package Sys., Inc. , No. 3:11-CV-00738, 2014 WL 3778211, at *4 (D. Conn. July 31, 2014) (recognizing that "[c]ourts acknowledge that named plaintiffs in class and collective actions play a crucial role in representing others" and concluding that "[e]ven where, as here, there is no evidence or indication of any retaliation by Defendant, class representatives merit recognition for assuming the risk of retaliation for the sake of absent class members"). Such recognition generally takes the form of an incentive award. Frank v. Eastman Kodak Co. , 228 F.R.D. 174, 187 (W.D.N.Y. 2005) ("Incentive awards are not uncommon in class action cases and are within the discretion of the court."); Anwar v. Fairfield Greenwich Ltd. , No. 09-CV-118, 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) ("Courts consistently approve [incentive] awards in class action lawsuits to compensate named plaintiffs for the services they provide and burdens they endure during litigation."). In considering whether to grant an incentive award, courts will consider "(1) the personal risk incurred by the named plaintiffs; (2) time and effort expended by the named plaintiffs in assisting the prosecution of the litigation; and (3) the ultimate recovery in vindicating statutory rights. Bozak , 2014 WL 3778211, at *4 ; see also Dornberger v. Metro. Life Ins. Co. , 203 F.R.D. 118, 124 (S.D.N.Y. 2001) ("An incentive award is meant to compensate the named plaintiff for any personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit."). Moreover, the amount of the award should be reasonable and otherwise consistent with awards approved in other class action cases. See Bozak , 2014 WL 3778211, at *4.
Having considered the above factors within the context of this litigation, the *718 Court finds that they weigh in favor of granting Plaintiff a service award. Although there is no indication that Dejana or any of the other Defendants ever threatened retaliation for the filing of this litigation, Plaintiff did expend significant time and effort in prosecuting this action which ultimately resulted in a favorable settlement for the Plaintiff as well as the class members. Therefore, a reasonable service award is appropriate. Plaintiff has requested an award of $10,000 and the Court finds this amount to be reasonable under the circumstances. See id. (approving a $10,000 service award); Toure v. Amerigroup Corp. , No. 10 Civ. 5391, 2012 WL 3240461, at *6 (E.D.N.Y. Aug. 6, 2012) (approving awards of $10,000 for each class representative); Lovaglio v. W & E Hospitality, Inc. , No. 10 Civ. 7351, 2012 WL 2775019, at *4 (S.D.N.Y. July 6, 2012) (approving service awards of $10,000 for each named plaintiff); see also Fleisher v. Phoenix Life Ins. Co. , No. 11-CV-8405, 2015 WL 10847814, at *24 (S.D.N.Y. Sept. 9, 2015). Therefore, the requested service award of $10,000 is approved.
III. CONCLUSION
For the reasons set forth above, Plaintiff's motion for attorneys' fees and costs is GRANTED, in part, and DENIED, in part as follows:
(1) Plaintiff is awarded $955,944.00 in attorneys' fees for litigating this action;
(2) Plaintiff is awarded $102,896.34 in costs and disbursements; and
(3) Plaintiff Michael Brewley is awarded a service fee in the amount of $10,000.
SO ORDERED.

Plaintiff Linda J. Kindle voluntarily dismissed her claims pursuant to Federal Rule of Civil Procedure 41(a)(l)(A)(ii) and was dismissed from this action on February 8, 2016. DE 100. On April 25, 2016, the Court granted Plaintiff's motion to certify a class consisting of, inter alia , "all persons who were participants in the ESOP when Atrium terminated the ESOP effective July 1, 2012 and/or beneficiaries of such ESOP participants or at any time thereafter ...." DE 114. As the class members have not yet been identified, the Court will use the term "Plaintiff" which shall refer solely to Michael Brewley, the remaining named Plaintiff in this case.

The parties' familiarity with the substance and procedural background of this litigation, which has previously been set forth at length in the Court's February 28, 2017 Opinion and Order disposing of the parties' cross-motions for summary judgment, is presumed and will not be repeated here.

The five factors that may be considered, known as the Chambless factors, are: "(1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants." Chambless v. Masters, Mates & Pilots Pension Plan , 815 F.2d 869, 871 (2d Cir. 1987) ; see Donachie , 745 F.3d at 46 (setting forth substantially the same five-factor inquiry).

Although this is a "common fund" case in the traditional sense, the parties have stipulated that "[c]ourt-approved attorneys' fees and costs, settlement administration costs, and service award to the Named Plaintiff will be paid by the Dejana Defendants separately from the [common fund]." DE 153-4 (Proposed Notice of Class Action Settlement).

From the inception of this lawsuit through approximately October 31, 2015, Plaintiff was represented by FJWW's predecessor, Lewis, Feinberg, Lee & Jackson, P.C. ("LFLJ"). Feinberg Decl. ¶ 11; see id. , Exhibit ("Ex.") 9 (LFLJ billing records dated March 12, 2014 through October 31, 2015).

Although Plaintiff also asserts that the higher rates are justified in light of the fact that the "relevant legal community [for prosecuting ERISA class action cases] is national in scope," Pl.'s Mem. at 13-14, this proposition cannot be reconciled with the Circuit's application of the forum rule and is rejected on that basis. See Severstal Wheeling , 2016 WL 1611501, at *4 n. 4 ("Plaintiffs suggest that, because the standard for ERISA is a national one, the Court should consider the rates charged by lawyers from around the country handling ERISA cases. The Court rejects this suggestion in light of the forum rule articulated by the Second Circuit.").